UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

═══════════════════════════════

D.A. ELIA CONSTRUCTION CORP.,

                              Plaintiff,

                                                    **DECISION AND ORDER**
            v.                                           11-CV-637-A

DAMON MOREY LLP and
WILLIAM SAVINO,

                              Defendants.

═══════════════════════════════

       This is an action brought by the plaintiff, D.A. Elia Construction Corp.,

against the defendants, Damon Morey LLP and William Savino, alleging two

claims that are related to defendants' work as plaintiff's former legal counsel.

The defendants removed the action from state court under 28 U.S.C. § 1452 on

the grounds that it is within the Court's original but not exclusive bankruptcy

jurisdiction over core proceedings pursuant to 28 U.S.C. § 1334(b).

       The action is presently before the Court on motions filed by plaintiff D.A.

Elia Construction Corp. ("Elia Construction") to remand it to state court under 28

U.S.C. § 1447(c) on the ground plaintiff's claims are not within the Court's

subject matter jurisdiction, for abstention in favor of allowing the action to

proceed in state court pursuant to 28 U.S.C. § 1334(c), and for attorney's fees

and costs because of the improper removal from state court under § 1447(c).

For the reasons stated below, however, the Court finds plaintiff's claims did "arise in" plaintiff's bankruptcy case pursuant to 28 U.S.C. § 1334(b), and that the Court has jurisdiction over the subject matter.  The Court finds that abstention would be highly wasteful.  Plaintiff's motions are all denied.

Defendants Damon Morey LLP and William Savino (collectively "Damon and Morey") have moved to dismiss plaintiff Elia Construction's Complaint pursuant to Fed. R. Civ. P. 12 as barred by *res judicata*; for monetary sanctions pursuant to 28 U.S.C. § 1927 and the Court's inherent power because the action is a frivolous collateral attack on several prior federal rulings, all of which seek to revive the same previously-litigated fee dispute; and for an expansion of an injunction against the litigation.  The Court finds the action frivolous because plaintiff's claims are barred by *res judicata* and dismisses the Complaint pursuant to Fed. R. Civ. P. 12, with prejudice.  The Court denies defendants' other motions at this time.

## PRIOR PROCEEDINGS

On July 27, 2011, defendants Damon Morey LLP and William Savino removed this case from New York State Supreme Court, Erie County.  On August 15, 2011, defendants filed their motions to dismiss the case as frivolous, to impose sanctions, and to impose a permanent injunction against any similar litigation by plaintiff D.A. Elia Construction Corp.  (Dkt. No. 4.)  Defendants seek dismissal and sanctions on the grounds that plaintiff has defied a prior injunction

2

of this Court and numerous orders from other courts through repeated attempts to relitigate a long-decided dispute over attorney fees payable to its bankruptcy counsel.

Meanwhile, on October 28, 2011, plaintiff filed its motion to remand the case to state court and to impose removal sanctions.  (Dkt. Nos. 20 and 21.) Plaintiff contends that the Court lacks jurisdiction over claims that differ from previous litigation and that properly belong in state court.

As a threshold matter, whether the Court has subject matter jurisdiction is a distinct question that is ordinarily to be answered prior to whether a plaintiff states a claim for relief under Fed. R. Civ. P. 12.  *Robinson v. The Government of Malaysia*, 269 F.3d 133, 141 (2d Cir. 2001).  But even before turning to the Court's subject matter jurisdiction, a partial summary of the parties' legal-fees saga is necessary.

## PRIOR PROCEEDINGS

### 1.  *Elia Construction's Bankruptcy.*

In 1994, plaintiff Elia Construction filed a petition for reorganization under Chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the Western District of New York (the "Bankruptcy Court") (Bkr. Case No. 94-10866).  Defendants Damon and Morey were debtor's counsel during the more than 10 years the bankruptcy was pending.  Throughout the decade,

defendants made five interim applications for attorney fees.  The Bankruptcy Court (Kaplan, *J.*) gave preliminary approval to the applications but reserved final judgment for the end of the proceedings.

Animosity surfaced when plaintiff Elia Construction responded to defendants' final fee application.  On June 29, 2004, defendants Damon and Morey filed a fee application before the Bankruptcy Court requesting an additional amount of $87,671.20 in fees and expenses for the Chapter 11 matter as well as for ancillary litigation that they handled for plaintiff.  Defendants also asked the Bankruptcy Court to give final approval to the five interim applications that they had submitted.  The Bankruptcy Court had reserved judgment on fees and expenses that totaled $261,288.42; in total, then, defendants' final fee application requested payment for a grand total of $358,756.62.  (Bankr. Dkt. No. 713.)

On September 1, 2004, plaintiff Elia Construction filed an objection to the final fee application.  (Bankr. Dkt. No. 728.)  In the objection, plaintiff requested not only that any further fees be denied but also that defendants "disgorge" any fees and expenses paid to them up to that point.  In support of the objection, plaintiff made the following arguments:

> 1.  Defendants' fees were excessive and unreasonable;
>
> 2.  Defendant Damon Morey was not a "disinterested person" within the meaning of the Bankruptcy Code;

> 3.  Defendants had conflicts of interest in some of the ancillary civil litigation that reduced the value of the bankruptcy estate and made plaintiff a rival claimant;
>
> 4.  Specific instances of ancillary civil litigation that created conflicts of interest with defendants included matters involving Construction Pacesetters, Saperston & Day, and Andrew Bernheim;
>
> 5.  Over many years, defendants rendered negligent representation of plaintiff in various civil litigation, damaging plaintiff in the amount of $906,241 plus interest.  Specific instances of this litigation included the Oswego Lock Project, Beeche Systems Corp., M&T Bank, K&S Contractor Supply, Inc., the Castleton Bridge Project, and the Piers Project; and
>
> 6.  Defendants engaged in questionable billing practices for financial gain and used abusive billing strategies to thwart plaintiff's efforts at reviewing their billing.

(*See* Bankr. Dkt. No. 728 *passim*.)  Defendants responded to the objection by pointing to plaintiff's pattern of issuing personal attacks against seven prior law firms in an effort to avoid paying any attorney fees for any litigation services. Defendants noted further that,  "Based on observation of the Elias since 1998, their continuing stratagem is to challenge everyone's right to payment, hanging their hats on whatever peccadilloes they can cobble together, then grind down the claimant, forcing a deep discount."  (Bankr. Dkt. No. 729 at 3.)

In an Order dated October 19, 2004 (Bankr. Dkt. No. 735), the Bankruptcy Court resolved all of plaintiff's arguments and approved all of defendants' fee applications.  The Bankruptcy Court also rejected any suggestion by plaintiff that

it could litigate certain pre-petition legal malpractice claims against defendants in that forum.  The Bankruptcy Court wrote specifically that:

> Elia's Affidavit is carefully drafted and contrived to create the impression that Savino agreed to waive any Statute of Limitations on malpractice and let the Bankruptcy Court decide pre-petition malpractice issues between Elia and Damon and Morey.  The Court has no doubt that there was no such agreement by Savino or Damon and Morey, as any such agreement would be completely improper and would turn this Court into a Federal forum for State Law matters, merely by agreement of the parties . . . .  If Elia believes that it can even now bring a malpractice action against Damon and Morey arguing equitable estoppel as to the malpractice Statute of Limitations, it is for the State Courts to hear that argument.

(*Id.* at 2.)  Plaintiff did not file any malpractice litigation in 2004 for those pre-petition claims, which necessarily would have been over 10 years old by then.

After some appellate proceedings that are discussed below, the Bankruptcy Court issued a final decree on September 21, 2007.  (Bankr. Dkt. No. 852.)  The final decree adopted a mandate from the United States Court of Appeals for the Second Circuit and included the directive that  "[t]his Court's Order approving in full the Final Fee Application of Damon and Morey is now final, and shall be forthwith obeyed by the Debtor."  (*Id.* at 1.)

On December 6, 2007, plaintiff filed a motion for relief from the money judgment entered in the case.  (Bankr. Dkt. No. 887).  The Bankruptcy Court denied the motion at a hearing on December 26, 2007.  (*see* Text Entry at Bankr. Dkt. No. 896).

6

## 2.  *First Civil Case (04-CV-975).*

The first civil case that this Court adjudicated for the parties was plaintiff's

appeal of the October 19, 2004 order of the Bankruptcy Court approving all of

defendants' fee applications.  In a 46-page brief (*see generally* Dkt. No. 8),

plaintiff argued the following:

> 1.  The Bankruptcy Court failed to apply any legal standard in considering the fee applications;
>
> 2.  The Bankruptcy Court had no basis for its findings of fact;
>
> 3.  Defendants should have to disgorge any attorney fees that they received from plaintiff because of numerous conflicts of interest not disclosed previously, including representation of parties adverse to plaintiff in ancillary litigation and personal relationships that compromised defendants' fiduciary duty to plaintiff;
>
> 4.  Defendants' undisclosed conflicts of interest forced plaintiff to pay otherwise unnecessary legal fees in excess of $100,000 to secure representation of an additional law firm;
>
> 5.  All of defendants' billing practices had to be reviewed for propriety because they led to billing that did not necessarily benefit the bankruptcy estate;
>
> 6.  Defendants had to be barred from receiving any compensation beyond what they had received to that point, because of numerous instances of unreasonable billing and litigation mismanagement involving projects like the Oswego Lock Project, the Beeche Scaffolding, the Thruway Authority, M&T Bank, the Dormitory Authority, and the Castleton Bridge Project;

7.  This Court should set reasonable attorney fees under the lodestar standard but should also deny any further compensation and require disgorgement of fees already paid; and

8.  This Court should require the Bankruptcy Court to hear plaintiff's legal malpractice claims, for the sake of efficiency, and to conduct hearings and to receive evidence concerning the reasonableness of the fee applications.

In a Decision and Order dated June 19, 2006, the Court rejected plaintiff's arguments and affirmed the Bankruptcy Court's order.  (*See generally* Dkt. No. 21.)  Specifically, the Court noted the Bankruptcy Court's use of 11 U.S.C. § 330 as the basis for its award of attorney fees and rejected plaintiff's contention that the award failed to use  "any legal standard."  The Court further noted that Section 330 of the Bankruptcy Code incorporates the lodestar method and that the Bankruptcy Court properly used information from defendants to calculate a reasonable amount of attorney fees.  The Court rejected plaintiff's argument that a hearing was necessary, holding that plaintiff had an opportunity to be heard through written objections and that whether to hold evidentiary hearings fell within the Bankruptcy Court's discretion.   As for plaintiff's contention that defendants were not entitled to any fees whatsoever, "Judge Kaplan was nothing short of astounded by those allegations.  So much so that, after hearing argument on the objections, he gave the debtor an opportunity to submit further evidence and briefing in support of its position.  After reviewing those supplemental

8

submissions, Judge Kaplan found that the allegations of malpractice and

misconduct lacked credibility and were belied by the record." (Dkt. No. 21 at 19-

20.)  This Court commented further that

> Like the bankruptcy court, this Court also finds it simply inconceivable
> that the debtor would have retained a law firm that it believed to have
> committed pre-petition malpractice.   Even more incredible is its
> assertion that it continued to retain that firm, year after year after year,
> even though it believe[d] that the firm continued to mishandle litigation.
> It is also inconceivable that the debtor would have failed to alert the
> bankruptcy court of this purported malpractice for nearly ten years, or
> that it would have failed to raise any issue concerning the pervasive
> conflicts that it claims to have existed and known about for years before
> the final fee application was filed.   The debtor's silence over this
> ten-year period speaks volumes as to its credibility.

(*Id.* at 20-21.)

Plaintiff appealed this Court's Decision and Order affirming the Bankruptcy

Court.  In a Summary Order filed on June 28, 2007 (Dkt. No. 33), the Second

Circuit affirmed.  *See also Bernheim v. Damon and Morey*, *LLP*, Nos. 06-3386-BK

(LEAD), 06-3389-BK (CON), 2007 WL 1858292 (2d Cir. June 28, 2007)

(summary order).  The Second Circuit dismissed plaintiff's arguments and held

that the Bankruptcy Court's conduct in setting a final attorney fee and rejecting

plaintiff's objections fell within the scope of its discretion.

### 3.  *Second Civil Case (06-MC-71).*

While the appeal in the First Civil Case was pending, the Court received a

recommendation from the Bankruptcy Court (Dkt. No. 1) concerning

enforcement of its order awarding attorney fees in the bankruptcy proceeding.

9

On August 11, 2006, the Bankruptcy Court entered a *sua sponte* Order (Dkt. No. 2-4) closing the bankruptcy proceeding and abstaining from any matters pending before this Court and the late Judge Elfvin at that time.[1]  On August 21, 2006, defendants moved to modify that *sua sponte* Bankruptcy Order to permit entry of judgment for the full award of attorney fees, which would allow them to enforce the fee award accordingly.  The Bankruptcy Court recommended to this Court that defendants' motion be granted but deferred to this Court, since this Court's Decision and Order affirming the award of attorney fees was under review before the Second Circuit.

In response to the Bankruptcy Court's recommendation, plaintiff filed objections (Dkt. No. 1-4) asserting that "the matter is properly before the Bankruptcy Court and therefore a decision on the Motion must initially be entered in the Bankruptcy Court with appropriate findings so that the parties, if they deem it appropriate, can subsequently appeal that decision with a complete and proper record to the District Court."  (*Id.* ¶ 8.)  Defendants responded to the objections by noting "that all of the arguments sought to be raised by the Debtor below in opposition to Damon & Morey's motion for entry of judgment were substantially all a re-hash of arguments that were made at the time of the initial

---

[1] At the time, Judge Elfvin had been presiding over a dispute as to who owned D.A. Elia Construction Corp.  That dispute, spanning at least four case numbers (98-CV-66, 98-CV-695, 99-CV-459, 05-CV-118) which was transferred to me upon Judge Elfvin's retirement, is not otherwise relevant here.

hearing on the allowance of Damon & Morey's fees, all of which have been rejected previously by the Bankruptcy Court and that decision was affirmed by this Court."  (Dkt. No. 2 at 4.)

In a Decision and Order filed on July 2, 2007 (Dkt. No. 10), this Court adopted the recommendation of the Bankruptcy Court and directed "that the Clerk of the Court:  (1) enter judgment in favor of Damon & Morey in the amount of $342,518.49, representing the amount of fees and disbursements owed to Damon & Morey pursuant to this Court's June 20, 2006 judgment; and (2) enter a declaration that "surplus money" exists in the Chapter 11 estate."  (*Id.* at 3.) Plaintiff appealed this Court's Decision and Order, but the Second Circuit affirmed it in a summary order dated October 3, 2008.  (*See* Dkt. No. 22; *see also In re D.A. Elia Const. Corp.*, 295 Fed. App'x 394 (2d Cir. Oct. 3, 2008) (summary order).)  In the summary order, the Second Circuit held bluntly that "Plaintiff-Appellant's arguments that Defendants are not entitled to fees have already been ruled on by our court, and are precluded . . . . This appeal is frivolous and should not have been brought by counsel, even if authorized by the client."  *Elia*, 295 Fed. App'x at 395 (citations omitted).

### 4.  *Third Civil Case (07-CV-143).*

Undaunted by prior rulings from the Bankruptcy Court and this Court, or by a declaration from the Second Circuit that its challenges to attorney fees were frivolous, plaintiff filed a new complaint against defendants on February 14, 2007

11

in New York State Supreme Court, Erie County.  The complaint contained four causes of action.  In the First Cause of Action, plaintiff claimed yet again that defendants harmed it by "refusing and failing to provide adequate legal representation."  (Dkt. No. 1-4 at 4–5.)  In the Second Cause of Action, plaintiff accused defendants again of negligence in the form of legal malpractice.  In the Third Cause of Action, plaintiff accused defendants of conversion with respect to a car sale that occurred during the bankruptcy proceedings.  In the Fourth Cause of Action, plaintiff accused defendants of damaging them through conflicts of interest that violated New York Judiciary Law § 487.  Defendants removed the case to this Court on March 8, 2007.  (Dkt. No. 1.)

The parties filed cross-motions in the case shortly after removal.  Plaintiff filed a motion to remand the case to state court on March 26, 2007.  In support of remand, plaintiff argued that this case was not related to the original bankruptcy proceedings and that neither diversity jurisdiction nor federal-question jurisdiction existed.  On March 27, 2007, defendants filed a motion for dismissal of the case, for sanctions, and for a permanent injunction.  Defendants sought dismissal on *res judicata* grounds because, *inter alia*, the complaint "clearly states that Plaintiff's claims are premised upon Damon & Morey's representation of it in its Bankruptcy Case and attaches pages from the Bankruptcy Court's Docket demonstrating that the case is the same one that was the subject of the Bankruptcy Fee Application Litigation."  (Dkt. No. 9 at 4.)

12

Defendants asserted further  "that the claims of alleged malpractice, negligence, conflicts of interest and alleged breaches of duties to the Plaintiff raised in the Complaint arose out of the same transactions as those plead in the Plaintiff's previous Objections to Damon & Morey's Sixth and Final Fee Application [and] is readily admitted by the Plaintiff." (*Id.* at 8.)  After noting additionally that the claims in the complaint were untimely, defendants requested sanctions under 28 U.S.C. § 1927 because plaintiff's then-counsel and its corporate principal, who is the attorney of record in this case, both knew the frivolous nature of the latest lawsuit.  Finally, defendants sought an injunction under 28 U.S.C. § 2283 prohibiting plaintiff  "from commencing further proceedings before any court, tribunal, governmental or regulatory body regarding any of those matters which are the subject matter of this lawsuit or which were the subject matter of the Bankruptcy Fee Application Litigation, punishable by contempt if violated." (*Id.* at 20.)  Defendants sought the injunction because "Plaintiff, its attorneys and its principals have flouted the Bankruptcy Court's and this District Court's prior decisions by commencing new litigation in a different forum about the same legal representation of the Plaintiff by Damon & Morey that was the subject of this Court's prior decision and judgment, which claims are barred by *res judicata*." (*Id.* at 21.)

　　In a Decision and Order filed on March 31, 2008, this Court denied plaintiff's motion to remand, granted defendants' motion to dismiss, and denied

13

defendants' request for sanctions and injunctive relief without prejudice.  The
Court found that removal was appropriate because "[t]he gravamen of each
cause of action is that Damon & Morey provided substandard legal services in
the course of representing Elia in the Chapter 11 and related legal proceedings.
But for Damon & Morey's representation of Elia in the bankruptcy case, there
would be no cause of action."  (Dkt. No. 21 at 6.)  The Court found further that
dismissal on *res judicata* grounds was appropriate because  "[t]he bankruptcy
court provided Elia with ample opportunity [to] raise those claims, but ultimately
rejected them as meritless.  Both this Court and the Second Circuit have
expressly determined that the bankruptcy court gave adequate consideration to
Elia's allegations of malpractice."  (*Id.* at 10.)  The Court denied sanctions and
injunctive relief only to "exercise restraint" (*Id.* at 14) one time, but warned
plaintiff  "that any subsequent attempts to relitigate issues that have been finally
adjudicated in connection with the attorney fee dispute will be deemed to be
brought in bad faith and may provide the basis for imposing sanctions and/or
injunctive relief." (*Id.* at 15.)

        Plaintiff appealed this Court's Decision and Order, and the Second Circuit
issued two separate rebukes in response.  First, the Second Circuit held that
"Elia's latest purported cause of action is a transparent attempt to relitigate an
attorneys' fees dispute that is, or ought to be, long settled, and this is not the first
time we have said so . . . .  Elia's claim that this case actually concerns pre-

14

petition conduct by Damon is wholly incredible, as the plain language of the complaint seeks redress for alleged malpractice, negligence and misconduct before the bankruptcy court." *D.A. Elia Const. Corp. v. Damon & Morey LLP*, 394 Fed. App'x 769, 770, 2010 WL 3769228, at *1 (2d Cir. Sept. 29, 2010) (summary order) (citations omitted).  In a separate order also dated September 29, 2010, the Second Circuit ordered plaintiff to pay defendants $2,000 as the reasonable cost of defending the appeal.  The Second Circuit issued the sanction because  "[t]his is the third appeal Appellant has brought before this Court concerning the same settled fee dispute, and we made clear in disposing of the second appeal that we viewed Appellant's continued pursuit of this matter to be precluded and frivolous."  (Dkt. No. 30.)

> ### 5. *Fourth Civil Case (07-CV-754).*

As noted above, when the Bankruptcy Court finally closed plaintiff's bankruptcy proceedings, it issued a final decree on September 27, 2007.  In that final decree, the Bankruptcy Court adopted a Second Circuit mandate regarding attorney fees and gave final approval to defendants' final fee application.  The final decree was one page long and did nothing more than adopt the Second Circuit mandate, give final approval, and close the case.  (*See* Dkt. No. 1 at 6.) Nonetheless, plaintiff appealed the Bankruptcy Court's adoption of the mandate by filing a Notice of Appeal to this Court on November 8, 2007.

Putting aside some preliminary procedural matters that arose in the case related to the filing of the notice of appeal, the Court dismissed the appeal in a Decision and Order dated March 16, 2009.  (Dkt. No. 8.)  The Court noted that "[t]he appeal is clearly frivolous.  The order appealed from did nothing more than adopt the mandate of the Second Circuit.  If Elia was dissatisfied with the result that it received in the Second Circuit, its only recourse was to petition for rehearing or to petition for certiorari to the United States Supreme Court.  In adopting the Second Circuit's mandate, the bankruptcy court was simply performing a ministerial function.  Clearly, the appeal from that order is simply a poorly disguised effort to relitigate matters that have already been throughly litigated in the bankruptcy court, this Court and even at the Second Circuit.  Because there is no merit to the appeal, there is no reason to reinstate it.  Doing so would only waste more of this Court's time and energy which would be better spent addressing cases that actually have merit."  (Dkt. No. 8 at 5–6.)  The Court concluded by enjoining plaintiff from  "from filing in this Court or in bankruptcy court any additional motions, appeals or requests for relief which ultimately seek to relitigate the attorney fee dispute between Elia and Damon & Morey."  (*Id.* at 7.)  The Court went as far as put plaintiff  "on notice that any violation of this injunction shall be met with an order to show cause as to why sanctions should not be granted."  (*Id.* at 7.)

Plaintiff had filed an appeal in this case but withdrew it by way of a

16

voluntary dismissal approved by the Second Circuit on June 23, 2009.

### 6.  *Fifth Civil Case (08-CV-103).*

On December 26, 2007, the Bankruptcy Court issued an oral order denying a motion that plaintiff had filed there on November 30, 2007.  That motion, again, sought relief from the judgment awarding Damon & Morey attorney's fees.  Plaintiff also wanted to have the law firm of Feuerstein & Smith, LLP, substituted as counsel for Elia.  At oral argument on December 26, 2007, the Bankruptcy Court denied the motion on the grounds that the bankruptcy case was closed and no longer pending.  Plaintiff appealed that oral order to this Court.  The Court dismissed the appeal as frivolous in a Decision and Order dated March 16, 2009—the same Decision and Order that disposed of Case No. 07-CV-754.  The Court stated that  "Elia's current appeal from that December 26, 2007 order is patently frivolous.  In its appellate brief, Elia argues that the bankruptcy court's judgment should be vacated so that it can show why Damon & Morey is not entitled to the attorney's fees that have already been awarded. Elia's attempt to relitigate this issue again and again must stop."  (Dkt. No. 6 at 7.)

### 7.  *The Instant Claims.*

In spite of all of the previous litigation, numerous orders of dismissal on the merits and on *res judicata* grounds, sanctions, and an injunction against

further litigation, plaintiff filed yet another Complaint in New York State Supreme

Court, County of Erie, on March 28, 2011.  David A. Elia, who is both a New

York-admitted attorney and a corporate principal of plaintiff, filed the action.

Despite complaining about the Construction Pacesetters matter in the

bankruptcy proceedings and then complaining about the bankruptcy

proceedings numerous times, plaintiff contends here that it  "has never had a full

and fair opportunity to litigate the liability and damages caused by Defendants'

secret kick-back agreement with Construction Pacesetters as guaranteed under

Article 1, § 6 of the New York State Constitution."  (Dkt. No. 1-4 at 12.)

Despite having explicitly raised numerous issues before concerning fraud

and attorney misconduct violating Judiciary Law § 487, plaintiff purports to allege

two causes of action alleging fraud and a violation of Judiciary Law 487 again

now.  Plaintiff alleges that newly-discovered evidence — evidence discovered

approximately five years ago — revitalizes its moribund claims and potential

claims.  The rest of the Complaint consists of the same allegations first raised

many years ago in the bankruptcy proceedings in a limpid attempt to re-cast

those allegations as new grounds for litigation.  (*See, e.g., id.* at 11 ("The

Defendants' intentional deceit and gross misrepresentations made to the

Bankruptcy Court, the District Court and later to the Court of Appeals have

damaged the integrity of the judicial system by causing controlling precedential

authority to stand for the illogical proposition that approval of an attorney's final

18

fee application *necessarily means* that the attorney did not commit malpractice, even where the bankruptcy court refused to hear malpractice claims, ruling that they were state law matters and should be brought in state court.")).  Plaintiff has asked the Court to remand the action to state court and to award it costs and fees.

Defendants, in turn, have moved to dismiss this case on *res judicata* grounds.  Defendants also have asked for sanctions in the amount of $10,000 and for an expansion of the Court's previous injunction against further litigation by plaintiff regarding the facts surrounding the original bankruptcy proceedings. Specifically, defendants have renewed their request from Case No. 07-CV-143 for an order  "pursuant to 28 U.S.C. § 2283, enjoining plaintiff, Elia Construction, its principals and its counsel from commencing further proceedings before any court, tribunal, governmental or regulatory body regarding any of those matters which are the subject matter of this lawsuit or which were the subject matter of the Bankruptcy Fee Application Litigation, punishable by contempt if violated." (Dkt. No. 4-10 at 17.)

## DISCUSSION

### 1.  *Remand, Subject Matter Jurisdiction, and Abstention.*

Plaintiff Elia Construction has moved to remand the action to state court on the ground that the Court lacks subject matter jurisdiction.  Federal courts are

courts of limited jurisdiction and "possess only that power authorized by
Constitution and statute, which is not to be expanded upon by judicial decree."
*Kokkonen v. Guardian Life Insurance Co. of America,* 511 U.S. 375, 377 (1994).
Pursuant to 28 U.S.C. § 1452(a), "[a] party may remove any claim or cause of
action in civil action . . . to the district court for the district where such civil action
is pending, if such district court has jurisdiction of such cause of action under
section 1334 of this title." *Id.* The burden of establishing that a case is properly
removed from state court on the ground that it within a federal court's subject
matter jurisdiction rests upon the party seeking removal. *See Hertz Corp. v.
Friend,* 130 S.Ct. 1181, 1194-95 (2010) (diversity jurisdiction)*; Blockbuster, Inc.
v. Galeno,* 472 F.3d 53, 57 (2d Cir. 2006). Doubts about the propriety of
removal from state court must be resolved against removal "out of respect for
the limited jurisdiction of the federal courts and the rights of states." *In re Methyl
Tertiary Butyl Ether ("MTBE") Product Liability Litigation,* 488 F.3d 112, 124 (2d
Cir. 2007).

     Section 1334(b) of Title 28 grants to district courts "original but not
exclusive jurisdiction of all civil proceedings arising under title 11, or arising in or
related to cases under title 11." *Id.* Cases "arise in" title 11 proceedings if they
"are not based on any right expressly created by title 11, but nevertheless,
'would have no existence outside of the bankruptcy'." *Baker v. Simpson*, 613
F.3d 346, 351 (2d Cir. 2010) (quoting *In re Wood*, 825 F.2d 90, 97 (5th Cir.

1987); citing *D.A. Elia Construc. Corp. v. Damon & Morey, LLP,* 389 B.R. 314, 317 (W.D.N.Y. 2008))).  If the claims have, as a practical matter, only arisen because of the bankruptcy, and their resolution was essential to administration of the estate, they are within the bankruptcy court's core jurisdiction.  *Id.*  Claims of malpractice or other kinds malfeasance against court-appointed professionals are frequently core, arising-in, claims within the scope of § 1334(b).  *See Baker v. Simpson*, 613 F.3d 346 (2d Cir. 2010); *Capitol Hill Group v. Pillsbury Winthrop, Shaw, Pittman, LLC,* 569 F.3d 485 (D.C. Cir. 2009); *Southmark v. Coopers & Lybrand,* 163 F.3d 925 (5th Cir. 1995).  Such claims are routinely uniquely affected by bankruptcy proceedings and directly affect a core bankruptcy function.

Plaintiff argues the instant claims do not  "arise in"  the bankruptcy because the claims also relate to matters that occurred outside the bankruptcy. It argues "this is not a malpractice case."  Dkt. No. 24, pp. 5-7.  Plaintiff disregards that not every core claim is an  "arising *under*"  claim that is asserted under a specific provision in title 11.  28 U.S.C. 1334(b) (emphasis added); *MBNA Am. Bank, N.A. v. Hill,* 436 F.3d 104, 108-09 (2d Cir. 2006).  For example, "[c]ommon-law claims closely connected with the administration of the bankruptcy can qualify as  "arising in"  a bankruptcy even though they may, in a literal sense, be brought outside a bankruptcy action."  *Lothian Cassidy, LLC v. Lothian Explor. & Dev.,* No. 12 Civ. 710 (VM), 2012 WL 440103 *4 (S.D.N.Y.

21

Jan. 28, 2013).  And plaintiff disregards "that core proceedings should be given

a broad interpretation that is close to or congruent with constitutional limits.  *Mt.*

*McKinley Ins. Co., v. Corning, Inc.,* 399 F.3d 436, 448 (2d Cir. 2005) (quotations

omitted).

The Court stated in a previous ruling on this dispute:  "A matter 'arises in'

Title 11 when the gravamen of the proceeding arises in the particular bankruptcy

case and would have no existence outside the bankruptcy."  *D.A. Elia Constr.*

*Corp. v. Damon & Morey,* 389 B.R. 314, 318 (W.D.N.Y. 2008).    That ruling

dismissed causes of action filed by plaintiff in state court that included: Judiciary

Law § 487; legal malpractice; breach of a legal retainer agreement, and

conversion.  *Id.* at 316.  The legal theories are the same and closely related,

distinguished only by the assertion now of  "newly discovered evidence"  of a

secret kickback scheme.  Accordingly, plaintiff has also disregarded that the

court's prior ruling of subject matter jurisdiction is to be given *res judicata* effect,

binding "the parties and those in privity with them."  *Travelers Indem. Co. v.*

*Bailey,* 557 U.S. 137, 152 (2009) (quotation omitted).

Plaintiff argues, nevertheless, that the claims asserted in this action do not

"arise in"  the bankruptcy because the bankruptcy proceeding is closed, and has

been for years now.  But lapsed jurisdiction of the bankruptcy court is not lost

jurisdiction.  Even though the bankruptcy case may be dismissed or closed, the

bankruptcy court retains jurisdiction to interpret and enforce its orders.  *Travelers*

22

*Indem. Co. v. Bailey,* 557 U.S. 137, 151 (2009); *see In re Parklex Associates,* 435 B.R. 195, 208 (S.D.N.Y. 2010).  When it necessary to do so, bankruptcy courts *sua sponte* re-open bankruptcy proceedings pursuant to 11 U.S.C. § 350(b) and § 157(a) to address the core issues. *See e.g., In re Seven Fields Development Corp.*, 505 F.3d 237, 248 n.10 (3rd Cir. 2007) (closed-case removal of dispute with accountants; bankruptcy case not reopened).  Plaintiff's motion to remand is without merit and is denied.  His motion for attorneys fees and costs because of the remand are denied.

Similarly, plaintiff offers confused argument that the Court is required to abstain from hearing this case.  Because the case is within core jurisdiction, abstention in the interest of justice is permissive, but not mandatory, pursuant to 28 U.S.C. 1334(c).  The considerations are similar if plaintiff were to have expressly sought an equitable remand under 28 U.S.C. § 1452(b).

In this case it is obvious that the Court should not abstain from exercising jurisdiction.  This Court should not burden a state court with having to wade through the history of this dispute only to eventually have to grips with the analysis of the res judicata effect of all the various federal court rulings summarized above to confirm plaintiff is and has been repeatedly barred from asserting the claims.

### 2.  *Res Judicata.*

As the Court has repeatedly advised plaintiff, "the doctrine of *res judicata*,

23

or claim preclusion, applies in later litigation if an earlier decision was (1) a final judgment on the merits, (2) by a court of competent jurisdiction, (3) in a case involving the same parties or their privies, and (4) involving the same cause of action.  If those criteria are met, a final judgment on the merits precludes the parties or their privies from relitigating issues that were or could have been raised in that action.  This rule applies with full force to matters decided by the bankruptcy courts." *In re Adelphia Recovery Trust*, 634 F.3d 678, 694 (2d Cir. 2011) (internal quotation marks, editorial marks, and citations omitted).  As noted in the summary of prior proceedings above, it is obvious plaintiff has had numerous opportunities to challenge the award of attorney fees to defendants before the Bankruptcy Court, in this Court, and in the Second Circuit Court of Appeals.  This case is plaintiff's latest attempt to deny defendants those fees. Based upon its prior rulings applying *res judicata*, the Court finds that *res judicata* bars this case and requires dismissal of the case in its entirety. Plaintiff's vendetta against defendants and its repeated attempts to use legal process to force them into dropping their attorney fees claim has burdened the docket of this Court long enough.  For the sake of brevity, the Court incorporates by reference the findings of frivolous litigation made previously by the Bankruptcy Court, this Court, and the Second Circuit.

### 3. *Injunction*

Defendants have requested an injunction prohibiting plaintiff from litigating

any matters addressed in this collective litigation anywhere ever again, including

in state court.  The Court is considering a more limited injunction requiring the

plaintiff  "to seek leave of the district court before filing such actions."  *Id.*  The

Second Circuit has in similar situations required leave of a district court in

combination with a requirement that a vexatious litigant attach information about

prior litigation to any future litigation in state court.  *See In re Martin-Trigona*, 737

F.2d 1254, 1263 (2d Cir. 1984) ("Upon remand, therefore, the district court

should continue the provisions of the injunction requiring Martin-Trigona to

append pertinent informational materials to pleadings in state courts."); *see also*

*id.* ("On remand, the district court should fashion an injunction prohibiting

Martin-Trigona from bringing new actions in any tribunal without leave from the

district court against persons who have encountered him in any capacity in

litigation in the District of Connecticut or in this court, including, but not

necessarily limited to, court personnel, counsel, and the families and

professional associates of such persons.").  For now, the Court is denying the

defendant's request for an expanded injunction.

### 4. *Sanctions*

The Court finally considers what to do about a party and an attorney

responsible for expending the Court's limited time with this vexatious litigation.

"Any attorney or other person admitted to conduct cases in any court of the

United States or any Territory thereof who so multiplies the proceedings in any

25

case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct." 28 U.S.C. § 1927. Additionally, "[t]he court has inherent power to sanction parties and their attorneys, a power born of the practical necessity that courts be able to manage their own affairs so as to achieve the orderly and expeditious disposition of cases." *Revson v. Cinque & Cinque, P.C.*, 221 F.3d 71, 78 (2d Cir. 2000) (internal quotation marks and citation omitted). "Like an award made pursuant to the court's inherent power, an award under § 1927 is proper when the attorney's actions are so completely without merit as to require the conclusion that they must have been undertaken for some improper purpose such as delay . . . . [A]n award made under § 1927 must be supported by a finding of bad faith similar to that necessary to invoke the court's inherent power. Indeed, the only meaningful difference between an award made under § 1927 and one made pursuant to the court's inherent power is, as noted above, that awards under § 1927 are made only against attorneys or other persons authorized to practice before the courts while an award made under the court's inherent power may be made against an attorney, a party, or both." *Oliveri v. Thompson*, 803 F.2d 1265, 1273 (2d Cir. 1986) (citations omitted).

In the face of multiple orders from the Bankruptcy Court, this Court, and the Second Circuit; an injunction against further filing from this Court; and an

order of sanctions from the Second Circuit, plaintiff Elia Construction chose yet again to use legal process to harass defendants with issues that trace all the way back to their original bankruptcy proceedings.  Counsel for plaintiff was fully aware of the repetitive and vexatious nature of this case, evidenced in part by his efforts in the latest complaint to anticipate and to skirt valid arguments for dismissal on *res judicata* grounds.  (*See* Dkt. 1-4 at 12 ("Should Defendants raise *res judicata* as a defense, due process requires, at minimum, that Defendants be required to identify where any court considered but rejected Plaintiff's claim based upon Defendants' kick-back agreement with Construction Pacesetters.").)  The attempts to dodge a *res judicata* dismissal and this Court's prior injunction appear disingenuous, because plaintiff and its counsel knew full well that they had harassed defendants before by suing in state court, by invoking Judiciary Law § 487, and by raising the "Construction Pacesetters" matter among numerous other matters.  (*See* Case No. 07-CV-143: Dkt. No. 1 (removal from state court); Dkt. No. 1-4 at 7 ("The Defendant is guilty of deceit or collusion with intent to deceive the Court and the Plaintiff herein in violation of §487 of the Judiciary Law."); Dkt. No. 14 at 5, 11 (Affidavit of David A. Elia, as CEO of plaintiff, referring to the "Construction Pacesetters" matter); *see also* Bankr. Dkt. No. 728 (mentioning the "Construction Pacesetters" matter).)  And five-year-old newly-discovered evidence relevant to those claims does not make for brand new claims

27

In spite of the circumstances, the Court will deny defendants' requests for sanctions at this time.  However, the Court finds *sua sponte* that the admission of David A. Elia to the bar of this Court *pro hoc vice* to handle this litigation should be revoked, for cause.  This action is frivolous.  It is within the Court's discretion to revoke plaintiff's counsel's pro hoc vice admission and it is hereby revoked.

## CONCLUSION

The Court has deemed the parties' motions submitted without oral argument pursuant to Fed. R. Civ. P. 78(b) after carefully considering the arguments and concluding oral argument was unnecessary.  In order to attempt to protect defendants, this Court, and the administration of justice from any further frivolous proceedings in this vexatious litigation, and in furtherance of this Court's jurisdiction to enforce its orders, the Court hereby finds, based upon the reasoning set forth above, that there are no meritorious issues for appeal of this Court's ruling that this action is frivolous and that it should be dismissed.  Plaintiff D.A. Elia Construction Corp. is warned that an appeal to the Second Circuit Court of Appeals of the issues raised before the district court may expose the plaintiff and any attorney appearing on its behalf to further and more severe sanctions, professional discipline, or other corrective action.  For all of the reasons stated above, it is hereby

**ORDERED,** that plaintiff's motion to remand or abstain is denied (Dkt. Nos. 20, 21); it is further

**ORDERED** that defendants' motions for dismissal, sanctions, and injunctive relief (Dkt. No. 4) are granted, in part, in that the action is dismissed, while the motion for sanctions and injunctive relief are denied; it is further

**ORDERED** the Clerk of the Court shall terminate the case.

SO ORDERED.

_s/ Richard J. Arcara_

HONORABLE RICHARD J. ARCARA
UNITED STATES DISTRICT JUDGE

DATED: March 29, 2013